# EXHIBIT A

**Calendar No. 1452**

| 89TH CONGRESS | SENATE | REPORT |
|---|---|---|
| 2d Session | | No. 1487 |

# FAIR LABOR STANDARDS AMENDMENTS OF 1966

AUGUST 23, 1966.—Ordered to be printed

Mr. YARBOROUGH, from the Committee on Labor and Public Welfare, submitted the following

# REPORT

together with

# SUPPLEMENTAL, INDIVIDUAL AND ADDITIONAL VIEWS

[To accompany H.R. 13712]

The Committee on Labor and Public Welfare, to which was referred the bill (H.R. 13712) to amend the Fair Labor Standards Act of 1938 to extend its protection to additional employees, to raise the minimum wage, and for other purposes, having considered the same, reports favorably thereon with an amendment in the nature of a substitute and recommends that the bill as amended do pass.

The amendment strikes out all after the enacting clause and inserts in lieu thereof a new text which appears in the reported bill in italic type.

## BACKGROUND OF LEGISLATION

The Fair Labor Standards Act was enacted in 1938 to meet the economic and social problems of that era. Low wages, long working hours, and high unemployment plagued the Nation, which was then in the midst of an unprecedented depression. The policy of the act, as set forth therein, was to correct and as rapidly as practicable to eliminate labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.

The Fair Labor Standards Act has proven through the years that its basic concept is sound. Despite the warnings of some critics who predicted the act would produce economic disaster, we have seen our economy emerge stronger than ever. Far from being an impediment to progress, the act has served as a foundation upon which has been built a standard of living for our citizens which is second to none.

67-711 O—66——1

and (d) is paid the same piece rate as employees over age 16 are paid on the same farm. (Such employees are included in the count for purposes of determining whether the 500 man-days test is met.)

(4) Any employee principally engaged in the range production of livestock.

The committee exempted from the agricultural coverage provision of the bill 10,000 employees who are principally engaged in the range production of livestock. The committee, because of the special circumstances of these employees, believes an exemption is appropriate.

In adopting an exemption for an "employee principally engaged in the range production of livestock," the committee intends to exempt only those employees who are engaged in activities which require constant attendance on a standby basis, such as herding and similar activities where the computation of hours worked would be extremely difficult.

The committee adopted the amendment described in subparagraph (3) after thorough consideration of the effect of agricultural coverage generally and more specifically the coverage of migrant children employed in agriculture. A majority of the committee in adopting this amendment believes that the children of migrants who typically accompany their parents in the harvest are not at this time appropriate persons to whom to apply an hourly minimum wage under the act. The exemption is limited to (1) children 16 years of age or under employed as hand harvest laborers, paid on a piece-rate basis on the same farm as their parent. It also requires that the same piece rate be paid such employees as other employees over age 16 are paid on the same farm. The committee also adopted an amendment to section 13(c) of the act, which would prohibit employment of children below the age of 16 in an occupation in agriculture if the Secretary of Labor finds the occupation to be particularly hazardous (unless such employees are employed by their parents on their parents' farm). This protection for children under 16 employed in agriculture would be in addition to the present provisions prohibiting employment of children in agriculture during school hours, which is retained by this bill. The committee rejected an amendment prohibiting employment of children in agriculture under age 12 and between ages 12 and 14 under certain circumstances. It does intend to study further the employment of children in agriculture to determine what further protection is needed.

An amendment was adopted by the committee to remove the exemption in the House bill of approximately 30,000 agricultural workers whose wage rates are set by the Secretary of Agriculture under section 301(c)(1) of the Sugar Act of 1948. In adopting this amendment, the committee understands that the Secretary of Agriculture would still establish the wage rate of such worker subject to such worker's receiving no less than the applicable minimum wage establsihed by the Fair Labor Standards Act. The committee sees no reason why these agricultural workers should receive less than the minimum wage.

During the consideration of agricultural labor coverage, the committee discussed the issue of who is an employee of the farmer and how to determine whether a person is an independent contractor. Section 3 of the act defines the terms "employ," "employee," and "employer." It is also clear that if a person is an independent contractor and not an employee of the agricultural employer, neither the independent contractor nor his employees would be employees of such