# EXHIBIT C

**Calendar No. 666**

| 93D CONGRESS | SENATE | REPORT |
| 2d Session | | No. 93-690 |

# FAIR LABOR STANDARDS AMENDMENTS OF 1974

FEBRUARY 22, 1974.—Ordered to be printed
Filed, under authority of the order of the Senate of February 21, 1974

Mr. WILLIAMS, from the Committee on Labor and Public Welfare, submitted the following

# REPORT

together with

# MINORITY VIEWS

[To accompany S. 2747]

The Committee on Labor and Public Welfare, to which was referred the bill (S. 2747) to amend the Fair Labor Standards Act of 1938, as amended, to extend its protection to additional employees, to raise the minimum wage to $2.20 an hour, and for other purposes, having considered the same, reports favorably thereon with amendments, and recommends that the bill as amended do pass.

## SUMMARY

The present minimum wage of $1.60 an hour was established by amendments to the Fair Labor Standards Act enacted in 1966. For most workers the $1.60 rate went into effect on February 1, 1968 (an interim raise from $1.25 to $1.40 was effective February 1, 1967). For newly covered non-farmworkers (employees of medium-size retail and service establishments and certain state and local government employees), the rate increased from $1.00 per hour effective February 1, 1967, by 15¢ per hour per year, until the $1.60 rate was reached February 1, 1971. For farmworkers, the rate of $1.00 was established effective February 1, 1967, with increases of 15¢ per year until the present rate of $1.30 was reached, effective February 1, 1969.

The purpose of this bill is to incorporate into the Fair Labor Standards Act a breadth of coverage and a minimum wage level sufficient to bring the Act closer to meeting its basic, stated objective—the elimina-

99-010

The Committee bill would eliminate this overtime exemption in three steps, except with respect to time spent in "charter activities" under specified conditions. The hours of employment will not include hours spent in charter activities if—(1) the employee's employment in such activities was pursuant to an agreement or understanding with the employer arrived at before engaging in such employment, and (2) if employment in such activities is not part of such employee's regular employment. These conditions are set so as to emphasize that the Committee intends that hours spent in "charter activities" as a part of the regular workday or workweek are to be included in the definition of "hours worked" under the Act.

The Committee has been persuaded that the transit industry has been adjusting to a shorter workweek for some time now. Collective bargaining agreements typically call for overtime after 40 hours a week—and in many cases after 8 hours a day. A large segment of the industry is now covered by such contracts. In addition, an overtime standard was applied to nonoperating employees of the industry by the 1966 amendments. The Committee bill requires that employees be paid time-and-one-half their regular rate of pay for all hours over 48 per week, beginning with the effective date; after 44 hours, 1 year later; and after 40 hours at the end of the second year and thereafter. This gradual approach ensures ease of adjustment.

It is noted that by virtue of the Committee's action on coverage of State and local government employment, together with its action on overtime pay in the local transit industry, operating employees of publicly and privately owned transit companies will be treated identically.

A question was raised concerning the applicability of the overtime provisions of the Act in the case of certain collective bargaining agreements involving local transit in the New York area which provide for straight-time pay for certain off-duty hours. The Committee notes that section 7(e)(2) of the FLSA provides that "payments made for periods when no work is performed due to . . . failure of the employer to provide sufficient work . . . are not made as compensation for hours of employment." The Committee also notes that the Department of Labor's regulations concerning "Hours Worked" contain the following provision (29 C.F.R. 785.16(a)):

"OFF DUTY"

"(a) *General.* Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked. He is not completely relieved from duty and cannot use the time effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived. Whether the time is long enough to enable him to use the time effectively for his own purposes depends upon all of the facts and circumstances of the case."

In 1972, by vote of 68–24 the Senate rejected an amendment to retain the overtime exemption for local transit.

*Hotels, motels, and restaurants*

S. 2747 eliminates the complete overtime exemption for employees employed by hotels, motels and restaurants and substitutes a limited overtime exemption as follows:

During the first year overtime compensation will be required for hours of employment in excess of 48 in a week and after the first year

such compensation will be required for hours of employment in excess of 46 in a week. For maids and custodial employees of hotels and motels the phaseout is as follows:

1. 48 hours in the first year.
2. 46 hours in the second year.
3. 44 hours in the third year.
4. Repealed thereafter.

In setting an overtime standard for employees of hotels, motels and restaurants the Committee recognized that the length of workweeks have been declining in these activities. It is interesting to note that when minimum wage coverage was extended to these workers by the 1966 amendments, the Department of Labor reported to the Congress that there was a reduction in the prevalence of long workweeks in these industries, even though an overtime exemption was retained.

*Tip allowance*

S. 2747 modifies section 3(m) of the Fair Labor Standards Act by requiring employer explanation to employees of the tip credit provisions, and by requiring that all tips received be paid out to tipped employees.

Currently, the law provides that an employer may determine the amount of tips received by a "tipped employee" and may credit that amount against the applicable minimum wage, but amounts so credited may not exceed 50 percent of the minimum rate. Thus, a tip credit of up to $.80 an hour may currently be deducted from the minimum wage of a tipped employee. (A tipped employee is defined as an employee who customarily and regularly receives more than $20 a month in tips.)

The Committee re-examined the role of tips as wages and the concept of allowing tips to be counted as part of the minimum wage. The Committee reviewed the study of tips presented to the Congress by the Department of Labor in 1971 as well as provisions of State minimum wage laws which permit the counting of tips toward a minimum wage.

The Committee was impressed by the extent to which customer tips contributed to the earnings of some hotel and restaurant employees in March 1970 (the date of the Labor Department survey). After reviewing the estimates in this report, the Committee was persuaded that the tip allowance could not be reduced at this time, but that the tipped employee should have stronger protection to ensure the fair operation of this provision. The Committee bill, in this respect, is consistent with the will of the Senate as expressed in an 89-1 vote in 1972.

Labor Department Regulations define a tip as follows (Part 531—Wage Payments under the Fair Labor Standards Act of 1938):

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of the gratuity.

Under these circumstances there is a serious legal question as to whether the employer should benefit from tips to the extent that

employees are paid less than the basic minimum wage because the employees are able to supplement their wages by special services which bring them tips.

Setting aside for the present the ethical question involved in crediting tips toward the minimum wage, the Committee is concerned by reports that inflation has been deflating tips.

In view of these reports the Committee intends that the Department of Labor should take every precaution to insure that the employee does in fact receive tips amounting to 50 percent of the applicable minimum wage before crediting that amount against the minimum wage.

The bill amends Section 3(m) by deleting the following language pertaining to the computation of tip credits: "except that in the case of an employee who (either himself or acting through his representative) shows to the satisfaction of the Secretary that the actual amount of the tips received by him was less than the amount determined by the employer as the amount by which the wage paid him was deemed to be increased under this sentence." The deletion of this language is to make clear the original intent of Congress to place on the employer the burden of proving the amount of tips received by tipped employees and the amount of tip credit, if any, which such employer is entitled to claim as to tipped employees. See *Bingham v. Airport Limousine Service*, 314 F. Supp. 565 (W. D. Ark. 1970) in which the court refused to "speculate" as to sums the employees might have received in tips when the employer failed to present "any objective information" on the subject.

The tip credit provision of S. 2747 is designed to insure employer responsibility for proper computation of the tip allowance and to make clear that the employer is responsible for informing the tipped employee of how such employee's wage is calculated. Thus, the bill specifically requires that the employer must explain the tip provision of the Act to the employee and that all tips received by such employee must be retained by the employee. This latter provision is added to make clear the original Congressional intent that an employer could not use the tips of a "tipped employee" to satisfy more than 50 percent of the Act's applicable minimum wage. H. Rept. 871, 89th Cong., 1st Sess., pp. 9–10, 17–18, 31; 111 Cong. Rec. 21829, 21830; 112 Cong. Rec. 11362–11365, 20478, 22649. See *Melton v. Round Table Restaurants, Inc.*, 20 WH Cases 532, 67 CCH Lab. Cas. 32,630 (N.D. Ga.).

The tip provision applies on an individual employee basis, and the employer may thus claim the tip credit for some employees even though the employer does not meet the requirements of this section with respect to other employees. Nor is the requirement that the tipped employee retain such employee's own tips intended to discourage the practice of pooling, splitting or sharing tips with employees who customarily and regularly receive tips—*e.g.*, waiters, bellhops, waitresses, countermen, busboys, service bartenders, etc. On the other hand, the employer will lose the benefit of this exception if tipped employees are required to share their tips with employees who do not customarily and regularly receive tips—*e.g.*, janitors, dishwashers, chefs, laundry room attendants, etc. In establishments where the employee performs a variety of different jobs, the employee's status as one who "customarily and regularly receives tips" will be determined on the basis of the employee's activities over the entire workweek.