# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

JACQUELINE ESRY, Individually and
on Behalf of all Others Similarly Situated                                                PLAINTIFF

v.                                       NO. 4:18CV00156-JLH

P.F. CHANG'S CHINA BISTRO, INC.                                                          DEFENDANT

## OPINION AND ORDER

This case is about the Little Rock P.F. Chang's payment practices with respect to its servers. Jacqueline Esry and several opt-in plaintiffs worked as servers for P.F. Chang's in Little Rock, where they received a tipped rate of $2.63 an hour from P.F. Chang's as well as tips. The plaintiffs claim the restaurant wrongly paid them the tipped rate for time that they should have been paid minimum wage. They argue that P.F. Chang's required servers to spend substantial time on work that by itself does not generate tips, such as rolling silverware or cleaning tables after customers have finished dining. By doing so P.F. Chang's violated the Fair Labor Standards Act and the Arkansas Minimum Wage Act, they say, and they seek among other things backpay and liquidated damages under both statutes.[1]

P.F. Chang's contends that it did nothing wrong by paying Esry and other servers the tipped rate for all their hours worked. It points out that P.F. Chang's undisputed practice was to ensure the servers received at least the applicable minium wage if, in a given workweek, that server did not earn sufficient tips to cover the tip credit. The servers therefore undisputably effectively received at least the hourly minimum wage, in accordance with the FLSA. P.F. Chang's moves for summary judgment on Esry's claims. For the reasons that follow, the motion is denied.

---

[1] At the outset, the Court dismisses the claims of opt-in plaintiff Ingram Murphy with prejudice. The parties agree that she, in fact, never worked for P.F. Chang's at a tipped rate. *See* Document #54 at 2-3. Her claims therefore fail.

The FLSA[2] requires employers to pay employees a minimum hourly wage, which is currently $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). But an employer generally may take a "tip credit" by paying "tipped employees" a lower "tipped rate" instead of minimum wage — so long as the employees receive enough tips to make up the difference between the tipped rate and minimum wage. *Id.* § 203(m). A "tipped employee" is an "employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." *Id.* § 203(t).

Recognizing that there are situations in which employees have more than one occupation under one employer—some occupations that are tipped and some that are not—the Department of Labor, tasked with enforcing the FLSA, promulgated a "dual jobs" regulation interpreting and implementing the tip credit. *See* 29 C.F.R. § 531.56(e). It provides the example of a maintenance man who also serves as a waiter. *Id.* Such an individual must receive the full minimum wage "for his hours of employment in his occupation of maintenance man," which does not generate tips, but may be paid as a "tipped employee" with respect to his employment as a waiter (so long as he customarily and regularly receives $30 a month in tips). *Id.* The regulation then explains:

> Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

*Id.* The Court defers under *Chevron* to this regulation because the statute is ambiguous. *See Fast v. Applebee's Intern., Inc.*, 638 F.3d 872, 878-79 (8th Cir. 2011) (stating that "we owe *Chevron* deference" to the regulation; as in the FLSA Congress "did not define 'occupation' or address the

---

[2] The Court treats the plaintiffs' AMWA claims the same as their FLSA claims in this case for the reasons previously explained. *See* Document #16 at 7-10.

possibility of an employee working more than one occupation for the same employer," nor did it define "engaged in an occupation").[3]

The Department of Labor Wage and Hour Division has further interpreted the ambiguous regulation in a "Field Operations Handbook," which "provides WHD investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and generally administrative guidance." *See* Index to Field Operations Handbook, Wage and Hour Division, United States Department of Labor, *available at* https://www.dol.gov/whd/FOH/index.htm (last visited March 11, 2019). According to the Department's website, the handbook "is not used as a device for establishing interpretive policy." *Id.*

Until February 15, 2019, the Handbook explained that an employer could take the tip credit "for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips, provided such related duties are incidental to the regular duties of the tipped employees and are generally assigned to the tipped employee." *See* Document #49-6 at 5. The Handbook did not define "related duties," but it gave the example of a server "who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee, and occasionally washes dishes or glasses." *Id.* The Handbook then provided:

> (3) However, where the facts indicate that tipped employees spend a substantial amount of time (i.e., in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be

---

[3] P.F. Chang's argues that the regulation is not entitled to *Chevron* deference because it was not subject to notice and comment when it was implemented in 1967. *See Chevron U.S.A, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). No party in the *Fast* case argued the regulation was not subject to *Chevron*, but the court explained that the statute is ambiguous and that "we owe *Chevron* deference" to the regulation. *Fast*, 638 F.3d at 879. This Court, bound by *Fast*, will proceed likewise.

> taken for the time spent in those duties. All related duties count toward the 20 percent tolerance.
>
> (4) Likewise, an employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation. For example, maintenance work (e.g., cleaning bathrooms and washing windows) are not related to the tipped occupation of a server; such jobs are non-tipped occupations. In this case, the employee is effectively employed in dual jobs.

*Id.*

In *Fast*, the Eighth Circuit held that the Department's interpretation of the regulation as contained in the Handbook was "reasonable, persuasive, and entitled to deference." *Fast*, 638 F.3d at 874 (citing *Auer v. Robbins*, 519 U.S. 542, 461, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997)). The *Fast* court explained that deferring under *Auer* was appropriate, rather than using the lesser *Skidmore* deference, because the regulation gave specificity to the FLSA statutory scheme rather than merely parroting the statute and the regulation reflected the considerable experience and expertise of the Department of Labor. *Id.* at 878-79. Moreover, the regulation itself is ambiguous – further supporting *Auer* deference – because it does not address an employee performing related duties more than "part of the time" or more than "occasionally." *Id.* at 879. Because *Auer* deference applied, the Eighth Circuit explained that "[t]he DOL's interpretation of § 531.56(e) is therefore 'controlling unless plainly erroneous or inconsistent with the regulation.'" *Id.* (quoting *Auer*, 519 U.S. at 461, 117 S. Ct. 905).

The Eighth Circuit deferred to the Handbook's "twenty-percent rule" or "80/20 rule." According to the *Fast* court, based on the terms "part of [the] time" and "occasionally," the regulation itself "clearly places a temporal limit on the amount of related duties an employee can perform and still be considered to be engaged in the tip-producing occupation." *Id.* The court also explained that a temporal limitation is consistent with other court decisions addressing similar

4

issues. For example, a server who spends an entire shift as a "salad preparer" should not be included in a tip pool and paid the tipped rate. *Id.* at 880 (citing *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 549-50 (6th Cir. 1999)). Ultimately, the *Fast* court concluded that the Department's twenty-percent threshold as contained in the Handbook was "not inconsistent with § 531.56(e) and [was] a reasonable interpretation of the terms 'part of [the] time' and 'occasionally' used in that regulation." *Id.* at 881. The court did not address which specific duties are "related duties" and which duties are the tip-producing part of a server's occupation, as this issue was outside the scope of the interlocutory appeal on which the case was decided. *Id.*

This February, the Department of Labor issued a revised Handbook. The relevant section of the Handbook references the "dual jobs" scenario laid out in 29 C.F.R. § 531.56(e). It explains that the dual jobs regulation "permits the employer to take a tip credit for *any time* the employee spends in duties related to the tipped occupation, even though such duties are not themselves directed toward producing tips." *See* Field Operations Handbook § 30d00(f)(2) (emphasis added). The Handbook further notes that WHD will consult the Occupational Information Network (O*NET) and 29 C.F.R. § 531.56(e) to determine whether duties are related or unrelated to the tip-producing occupation. *Id.* § 30d00(f)(3). The Handbook provides:

> An employer may take a tip credit for any amount of time that an employee spends on related, non-tipped duties performed contemporaneously with the tipped duties—or for a reasonable time immediately before or after performing the tipped duties—regardless whether those duties involve direct customer service. *See* WHD Opinion Letter WH-502 (March 28, 1980), which concludes that a server's time spent performing related duties (e.g., vacuuming) after restaurant closing is subject to a tip credit. For example, the core tasks currently listed in O*NET for waiters and waitresses (*see* the O*NET Summary Report for waiters and waitresses) include: cleaning tables or counters after patrons have finished dining; preparing tables for meals, which encompasses setting up items such as linens, silverware, and glassware; and stocking service areas with supplies such as coffee, food, tableware, and linens. In addition, O*NET lists garnishing and decorating dishes in preparation for serving as a supplemental task for waiters and waitresses. An employer may take a tip credit

5

> for any amount of time a waiter or waitress who is a tipped employee spends performing these related duties.

*Id.*

P.F. Chang's argues that it paid servers lawfully under the FLSA's plain language, ending the Court's inquiry. It further argues that it paid servers lawfully under the dual jobs regulation. P.F. Chang's attacks the plaintiff's reliance on the former Handbook and the *Fast* case, arguing that the regulation is not entitled to *Auer* deference because the Department of Labor's guidance on the dual jobs regulation has changed substantially over time, and arguing that *Fast*'s approval of the twenty-percent rule is no longer valid now that the Handbook has been revised. Even if the Department's view as articulated in the current Handbook should receive deference, P.F. Chang's argues, the plaintiffs' claims fail.

Esry counters that *Fast* controls because the court there interpreted the precise statutory and regulatory language at issue — and it did so in her favor. She argues that the Department's new view is not entitled to deference; rather, "[t]he Eighth Circuit's binding textual analysis of the longstanding law and regulations is the reasonable interpretation of these relevant regulations." Document #53 at 1. Esry says there is no basis for the Court to follow the Department's new position, and that the twenty-percent rule — as articulated in the former Handbook to which the *Fast* court deferred — should still govern.

As both parties urge, the Court will not defer to the Department of Labor's new guidance in the revised Handbook. First, it is true that the Department's guidance on the dual jobs regulation has changed substantially over time. The Department previously articulated a reasonable method of determining when a person is engaged in dual jobs based on limiting the time spent on duties that do not directly produce tips. Under that guidance an employer could not take a tip credit for time

a server spent on related tasks if the tasks occupied more than twenty percent of her time. Recently the Department concluded the opposite: that an employer may take a tip credit for *any amount of time* that an employee like Esry spends on related, non-tipped duties. This about-face is not dispositive but it weighs against deferring to the revised Handbook. *See Christopher v. Smithkline Beecham Corp.*, 567 U.S. 142, 155, 132 S. Ct. 2156, 2166, 183 L. Ed. 2d 153 (2012) (deference may be unwarranted "when the agency's interpretation conflicts with a prior interpretation"); *but see Fast*, 638 F.3d at 879 (noting that *Auer* may apply to a new interpretation of a regulation even if the interpretation has changed over time if there is no reason to suspect that the new interpretation does not reflect the agency's fair and considered judgment on the matter).

However, even if the Department's Handbook had long been in its current form, the Court would not defer to it. *Auer* deference is undoubtedly inappropriate when the agency's interpretation of its own ambiguous regulation is plainly erroneous or inconsistent with the regulation. *Christopher*, 567 U.S. at 155, 132 S. Ct. at 2166; *Fast*, 638 F.3d at 878-79. Here, as *Fast* explained, 29 C.F.R. § 531.56(e) "clearly places a temporal limit on the amount of related duties an employee can perform and still be considered to be engaged in the tip-producing occupation." *Fast*, 638 F.3d at 879. It contrasts a person in dual jobs from a waitress who only spends "part of her time" or only "occasionally" performing related duties that are not by themselves directed toward producing tips. *See id.*

P.F. Chang's argues that "[n]othing in the dual jobs regulation suggests that a tipped employee who earns sufficient tips to cover the tip credit, but who spends more than a certain amount of time on side work as opposed to directly interfacing with customers, somehow ceases to be engaged in a tipped occupation with respect to some or all of his or her working time . . . ." Document #51 at 22. But as the plain language shows, and as the *Fast* court held, the dual jobs

7

regulation does suggest a temporal limit by including the terms "part of [the] time" and "occasionally." With these terms, the regulation implies that if a server spends *more than* "part of her time" performing or *more than* "occasionally" performs related duties that are not directed toward producing tips, she is in fact employed in "dual jobs," and must be paid accordingly.

The new Handbook says there is no limit on the amount of related duties a server can perform and be paid the tipped rate, so long as the duties are performed contemporaneously with tip-producing duties or for a reasonable time immediately before or after. It explicitly states — in contrast with the regulation — "[a]n employer may take a tip credit for any amount of time a waiter or waitress who is a tipped employee spends performing . . . related duties." Field Operations Handbook § 30d00(f)(3). If the regulation's plain language and *Fast* are to be followed, the current Handbook is inconsistent with the regulation. The Court therefore will not defer under *Auer* to the Department's guidance contained in the Handbook. *Christopher*, 567 U.S. at 155, 132 S. Ct. at 2166; *Fast*, 638 F.3d at 878-79.[4]

Instead, the Court accords the Handbook's guidance "a measure of deference proportional to the 'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" *Christopher*, 567 U.S. at 159, 132 S. Ct. at 2169 (quoting *United States v. Mead Corp.*, 533 U.S.

---

[4] At least two other district courts have likewise indicated that the Department's new guidance is not entitled to *Auer* deference. *See Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976, 986 (W.D. Mo. 2019) (declining to defer under *Auer*); *Callaway v. DenOne LLC*, 2010 WL 1090346 at *7 (N.D. Ohio March 8, 2019) (remarking "the Court is hesitant to defer to the agency" in part because rationales for *Auer* deference were absent, but ultimately not addressing the issue). At the time *Cope* was decided, the Department had not issued a revised Handbook but had stated its intent to do so and had advised the public of the new interpretation through an Opinion Letter. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Nov. 8, 2018), 2018 WL 5921455. The *Cope* court determined that even if the Department revised the Handbook, the twenty-percent rule would still apply because it was a reasonable interpretation. *Cope*, 354 F. Supp. 3d at 986-87.

218, 228, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001)). The Department's new interpretation is not persuasive. This is so in part because the revised Handbook "purport[s] to change the DOL's interpretation after years of consistently construing the Dual Jobs Regulation as limited by the 80/20 rule." *Cope*, 354 F. Supp. 3d at 986. But most importantly the guidance is unpersuasive because, as discussed above, it contradicts the regulation as it plainly reads and as *Fast* interpreted it.

In its motion for summary judgment, P.F. Chang's substantive argument against Esry's claim under the dual jobs regulation was that the regulation "by its terms does not establish limits on side work." Document #51 at 10; *see also id.* at 21-22. The Court has concluded to the contrary and in accordance with *Fast* that the regulation does establish limits — although imprecise limits — on side work, or work that does not directly produce tips. P.F. Chang's motion for summary judgment, or for partial summary judgment, must therefore be denied.

The question of law remains: when does a server go from spending "part of her time" performing or "occasionally" performing related work to effectively being employed in dual jobs? For example, if a server waits only one table in a shift, and prepares salads or washes dishes the rest of the time, is she engaged in a tipped occupation the entire time or is she somehow employed in dual jobs? The twenty-percent rule under *Fast* — although almost certainly burdensome to apply in practice — had the benefit of clearly answering this question: when related duties exceeded twenty percent of her time. *Fast*'s approval of the twenty-percent rule does not bind this Court because it was based largely on the Department's former Handbook, which has been replaced.[5] Nevertheless, the Court agrees with the *Cope* court that the twenty-percent rule approved of in *Fast*

---

[5] The *Fast* court noted that the term "occasionally" means "now and then; here and there; sometimes." *Fast*, 638 F.3d at 878-79 (quoting Webster's Third New Int'l Unabridged Dictionary 1560 (1986)). This definition also supported the conclusion that the twenty-percent rule was a reasonable interpretation of the regulation.

9

is a reasonable interpretation of the regulation. Unless and until *Fast* is overruled or the Department of Labor issues new guidance, this Court will follow *Fast* and apply the twenty-percent rule.

The defendant's motion for summary judgment is DENIED. Document #49. An amended final scheduling order will issue.

IT IS SO ORDERED this 22nd day of March, 2019.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE